UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| MICHAEL B.,[1] | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:24-cv-00043-KMB-TWP ) |
| FRANK BISIGNANO,[2] | ) ) |
| Defendant. | ) |

### ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT

Presently pending before the Court is the Commissioner's Motion to Alter or Amend Judgment. [Dkt. 21.] After reviewing its previous decision, [dkt. 19], the Commissioner's Motion, and Claimant Michael B.'s opposition, the Court concludes that the Commissioner has not met the standard for the Court to amend or alter its prior decision, such that the Commissioner's Motion is **DENIED**.

#### I. RELEVANT BACKGROUND

In March 2025, the Court issued an Entry Reviewing the Commissioner's Decision, reversing and remanding this case for further proceedings. [Dkt. 19.] The Commissioner timely filed this Motion, requesting that the Court alter or amend its judgment in accordance with Federal Rule of Civil Procedure 59(e). [*Id.* at 1.] Michael filed a response in opposition. [Dkt. 22.] The

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinion.

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Commissioner did not file a reply, and the time to do so has passed. The Motion is now ripe for the Court's review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) allows a court to alter or amend a judgment if the party files the motion "no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Rule 59(e) is "reserved for extraordinary cases." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Ind.*, 786 F.3d 510, 521 (7th Cir. 2015). "A Rule 59(e) motion can be granted only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Barrington Music Prods., Inc. v. Music & Arts Ctr.*, 924 F.3d 966, 968 (7th Cir. 1995) (internal citations omitted). "The purpose of Federal Rule of Civil Procedure 59(e) is to allow a party to bring to the district court's attention a manifest error of fact or law so that it may correct, or at least address, error in the first instance." *A&C Construction & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020). However, a party may not introduce new evidence or present arguments that it could and should have presented in the first instance. *Id.*

## III. DISCUSSION

The ALJ in this case found that Michael was capable of light work and therefore was not eligible for disability benefits. This Court reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) after concluding that the ALJ erred by impermissibly creating a residual functional capacity ("RFC') based on the ALJ's lay interpretation of medical evidence after rejecting every medical opinion available. [Dkt. 19.]

The Commissioner's Motion argues that "the ALJ—not any doctor—determines the RFC 'based on all of the relevant medical and other evidence.'" [Dkt. 21 at 2 (quoting 20 C.F.R. §

2

404.1545(a)(3)).] Thus, the Commissioner argues that the Court "impermissibly extends the holding in *Suide v. Astrue*, 371 F. App'x 684 (7th Cir. 2010)[,]" by holding that the ALJ creates an evidentiary deficient when the ALJ does not adopt a medical opinion. [*Id.* at 3.] It is the Commissioner's position that *Suide* holds there "may be" an evidentiary deficit where the ALJ does not adopt a medical opinion and "the record contains evidence that is inconsistent with the RFC assessment." [*Id.*] The Commissioner contends that was not the case here. [*Id.* at 3-4.]

Michael responds that the Court remanded the ALJ's decision because the ALJ improperly filled an evidentiary gap with his own lay interpretation of medical evidence, not simply because the ALJ rejected all the medical opinions. [Dkt. 22 at 1-2.] "Neither Plaintiff nor the Court assert that the ALJ is required to 'rubber stamp' an expert medical opinion." [*Id.* at 2.] Michael argues that the Commissioner does not "provide any narrative explanation" as to how the ALJ created an RFC without any medical opinion to rely on for interpreting medical evidence about his A1c levels. [*Id.*] Michael cites to several cases for the proposition that an ALJ must not "succumb to the temptation to play doctor." [*Id.* (internal citations omitted).]

After reviewing the Commissioner's arguments and rereviewing the applicable caselaw, the Court does not conclude that manifest error occurred such that its prior judgment should be altered or amended. The Court does acknowledge that certain language in its prior decision interpreted *Suide v. Astrue* too broadly, so the Court does clarify that in this decision even though this clarification does not affect the ultimate outcome of the case. Specifically, the Court previously stated that "[d]istrict courts in the Seventh Circuit have consistently held that rejecting every expert medical opinion in the record creates an evidentiary gap." [Dkt. 19 at 6.] The Commissioner challenges this statement by emphasizing that "*Suide* stands only for the proposition that there *may be* an evidentiary deficit where the ALJ does not adopt a medical opinion and the record contains

3

evidence that is inconsistent with the RFC assessment." [Dkt. 21 at 3 (emphasis added).] The Court agrees—the caselaw in this Circuit supports the assertion that an ALJ rejecting all medical opinions may, but does not always, create an evidentiary gap in the record that requires remand. *See, e.g.*, *Kara v. Kijakazi*, 2022 WL 4245022 (E.D. Wisc. 2022); *Shirley A. J. v. O'Malley*, 2024 WL 1341077 (N.D. Ind. 2024); *Alvin S. v. Kijakazi*, 2023 WL 2499860 (N.D. Ill. 2023); *Jennifer B. v. Saul*, 2020 WL 2520996 (N.D. Ind. 2020).

The Court stands by its previous conclusion that this is one of the cases where the resulting evidentiary gap requires reversal of the ALJ's decision because "the ALJ improperly filled an evidentiary gap in this case with his own lay interpretation of the medical data, and this error requires remand." [Dkt. 19 at 7.] Specifically, in Michael's case, the ALJ improperly speculated as to the effect of diabetes and diabetic neuropathy on Michael's functioning. The medical opinions available to the ALJ either "found the claimant's physical and mental impairments [were] all non-severe[,]" [dkt. 11-2 at 45], or recommended more functional limits than the ALJ incorporated, [*id.* at 44-45]. The ALJ rejected all the medical opinions available to him, which created an evidentiary deficit in this case, and then he constructed a "middle ground" RFC that was informed by his lay interpretation of medical evidence with respect to the impact of these restrictions on Michael's ability to sit, stand, walk, and otherwise work in the workplace. In this case, that constituted reversible error.

As Michael emphasizes in his response brief, "Defendant does not provide any narrative explanation as to how the ALJ was qualified to decide functional limitations based on his consideration of evidence that the 'A1c was 10.1% in July 2021, improved to 7.4% in August, but then rose again to 9.0% in October 2021.'" [Dkt. 22 at 2 (quoting dkt. 11-2 at 41).] The Court agrees that without a physician's functional limitation report, the ALJ could not convert these

4

results into an RFC. Michael expounded on his neuropathy in his report, including that he can stand for "5-10 minutes before his feet start hurting really bad[,]" "he can only sit for 30-45 minutes before having to get up and move[,]" "on an average day he has his feet elevated for 60-70% of the time[,]" and "he needs the can [sic] about 50% of the time when getting up to stand." [Dkt. 11-2 at 41.] NP Smedley stated Michael could

> [w]alk less than two city blocks; sit for 30 minutes at a time for a total of less than 4 hours an 8-hour workday; and stand 15 minutes at one time with standing/walking limited to less than 2 hours in an 8-hour workday . . . . would require unscheduled breaks every 1-2 hours to rest for 15-30 minutes . . . . [and] would need to elevate his legs to heart level 50% of an 8-hour workday due to neuropathy.

[Dkt. 11-2 at 44.] In contrast, the state agency medical and psychological consultants found Michael's impairments to be non-severe and thus "did not offer opinions regarding [Michael's] ability to perform physical or mental related work activities." [*Id.* at 45.]

The ALJ rejected NP Smedley's opinion and "was left without any medical opinions to rely on to interpret the medical data in the case and craft an RFC." [Dkt. 19 at 7.] The ALJ was not required to adopt a specific medical opinion to develop the RFC. However, *in this case*, failing to be even partially persuaded by any medical opinion meant that the ALJ impermissibly interpreted medical evidence alone—a clear violation of the well-established precedent that the ALJ not play doctor. *See, e.g.*, *Suide*, 371 F. App'x. at 690 (holding the ALJ "is not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps in the record").

In Michael's case, the ALJ stated that he "has afforded the exertional and postural limits in the residual functional capacity to account for diabetes[ and] diabetic neuropathy[,]" [dkt. 11-2 at 44], but the ALJ could not have known that Michael's neuropathy made him capable of "sit[ting] for 6 hours in an 8-hour workday and stand[ing] and/or walk[ing] 4 hours in an 8-hour workday[,]" [*id.* at 40]. Put another way, without relying on something to interpret the A1c levels or the effect

5

of neuropathy on Michael's functional limitations, the ALJ "failed to construct the requisite accurate and logical bridge from the evidence to the ALJ's 'middle ground' physical RFC." *Artur P. v. Commissioner of Social Security*, 2024 WL 1252272, at *4 (quoting *Marianne T. v. Saul*, 2021 WL 1088322 (N.D. Ill. 2021)).

The Court's decision in this case is consistent with caselaw from other district courts in the Seventh Circuit. For example, in *Kara v. Kijakazi*, the court remanded the case where the ALJ rejected the opinions of medical professionals and created a middle ground RFC. 2022 WL 4245022, at *3 (E.D. Wisc. 2022). "Because they are not medical experts, an ALJ's interpretation of raw medical data is no better than a butcher's or a postman's." *Id.* *Kara* emphasized that "[n]one of the medical professionals interpreted the data in a manner consistent with the ALJ's conclusion, and he rejected each of those professionals anyway." *Id.* Again, like in Michael's case, *Kara* was clear that the ALJ did not have to "choose from the menu of opinions provided him . . . but when this results in a complete absence of valid expert opinions, the ALJ should summon a medical expert who can review the record and offer an opinion grounded in the evidence." *Id.*

Other district courts in the Seventh Circuit have reached similar conclusions to *Kara*. *See, e.g.*, *Shirley A. J. v. O'Malley*, 2024 WL 1341077 (N.D. Ind. 2024) (holding the ALJ created an evidentiary deficit by rejecting all the opinions and then using a lay interpretation regarding carpal tunnel to create an RFC); *Artur P.*, 2024 WL 1252272, at *4 (remanding where the ALJ rejected all opinions then created a "middle ground" RFC and concluded the claimant could perform sedentary work); *Alvin S. v. Kijakazi*, 2023 WL 2499860 (N.D. Ill. 2023) (remanding where the ALJ relied on her own independent deductions to formulate the claimant's RFC after rejecting all medical opinions); *Joel B. o/b/o Melissa B. v. Kijakazi*, 2022 WL 2589785, at *6 (S.D. Ind. 2022) (remanding because "without at least some reliance on any medical opinions, substantial evidence

6

is lacking from the ALJ's RFC determination"); *Jennifer B. v. Saul*, 2020 WL 2520996, at * 8 (N.D. Ind. 2020) (citing *Daniels v. Astrue*, 854 F. Supp. 2d 513, 523 (N.D. Ill. 2012) ("Once the ALJ determined that [the medical opinions] were insufficient and unsupported by the medical evidence, the ALJ had a duty to conduct an appropriate inquiry to fill that gap. What the ALJ could not do was fill the gap on her own.")).

The Commissioner wholly ignores the plethora of caselaw cited by this Court in its prior decision. Instead, the Commissioner cites discrete cases like *Reetz o/b/o Reetz v. Kijakazi*, 2023 WL 183859 (E.D. Wis. 2023), which stated "in *Suide*, the Seventh Circuit did not require the ALJ to rely on a medical opinion when crafting the RFC." [Dkt. 21 at 4.] *Reetz* goes on to explain that in *Suide*, the ALJ "discredited the RFC opinions of *both* the state agency physician *and* the claimant's treating physician" leaving only one doctor's opinion that did not include a functional assessment. *Id.* at *3 (emphasis original). *Reetz* concluded that "[a]lthough an evidentiary deficit can occur under circumstances where an ALJ rejects each record opinion indicating functional limitations; in this case, there is no evidentiary deficit where the ALJ partially relied on agency consultants' opinions but incorporated additional limitations." *Id.* *Reetz* is not applicable to Michael's case, however, because in this case, the ALJ rejected all of the medical opinions available to him instead of "partially rel[ying]" on any of them in formulating Michael's RFC as *Reetz* found was permissible.

The Commissioner also cites *Benito M. v. Kijakazi*, 2022 WL 2828741 (N.D. Ill. 2022). [Dkt. 21 at 4.] *Benito* stated that "[r]emand was required in *Suide* because the rejection of the physician's medical opinion left the ALJ's RFC determination untethered to any record evidence. And an ALJ is certainly prohibited from 'playing doctor' by filling in evidentiary gaps in the record with his own lay opinion." *Id.* at *3 (internal citation omitted). *Benito* specifically mentioned that

7

cases do exist where the ALJ impermissibly creates an evidentiary deficit and constructs a middle ground RFC. *Id.* at *5, n. 4. However, that was not the case in *Benito*, where the ALJ found several opinions "moderately persuasive" or "less persuasive." *Id.* at *3. In Michael's case, by contrast, the ALJ rejected all of the medical opinions and then impermissibly filled the resulting evidentiary gaps with his own lay opinion. That latter step is the one that requires reversal and remand of the ALJ's decision. As the Court previously stated, "[t]he issue here is not whether the ALJ properly discounted NP Smedley's opinion; rather, the issue is whether the ALJ erred when he used his own interpretation of the record to craft Michael's RFC after he rejected all of the available medical opinions." [Dkt. 19 at 7.] The Court previously concluded that the ALJ erred in this case, and nothing in the Commissioner's Motion changes that prior conclusion. Thus, the Court **DENIES** the Commissioner's Motion to Alter or Amend Judgment. [Dkt. 21.]

### IV. CONCLUSION

For the reasons discussed herein, the Commissioner's Motion to Alter or Amend Judgment is **DENIED**. [Dkt. 21.]

**SO ORDERED.**

Date: 6/26/2025

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

8